IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE BREEN,<br>          **Plaintiff,**<br><br>          v.<br><br>MILLARD GROUP, INC., also known as<br>"THE MILLARD GROUP,"<br>SD PROPERTY GROUP, INC.,<br>SIMON PROPERTY GROUP, L.P.,<br>SIMON PROPERTY GROUP<br>(DELAWARE), INC.,<br>SIMON PROPERTY GROUP, INC.,<br>FRANKLIN MILLS GP, INC.,<br>FRANKLIN MILLS, LLC, and<br>PHILADELPHIA COCA-COLA<br>BOTTLING CO.,<br>          **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  13-6926 |

DuBois, J.                                                                     November 9, 2016

**M E M O R A N D U M**

## I.     INTRODUCTION

This is a negligence case. Plaintiff Diane Breen avers that she slipped on liquid on the

floor at Franklin Mills Mall and fell, injuring herself. She alleges that her fall was caused by the

negligence of defendants Millard Mall Services, Inc.,[1] SD Property Group, Inc., Simon Property

Group (Delaware), Inc., Simon Property Group, L.P., Simon Property Group, Inc., Franklin

Mills, GP, Inc. and Franklin Mills, LLC (the "Mall Defendants")[2] and Coca-Cola Refreshments

USA Inc. ("CCR").[3] Presently before the Court are Mall Defendants' Motion for Summary

---

[1] Millard Mall Services, Inc. was incorrectly identified in the Amended Complaint as "Millard Group, Inc., also known as 'The Millard Group.'" Mall Defs.' Ans. to Am. Compl. 1.
[2] In this Court's Order dated July 6, 2015, plaintiff's claim against defendant Franklin Mills Market Place Lot Stores, Inc., was marked withdrawn without prejudice at plaintiff's request.
[3] CCR was incorrectly identified in the Amended Complaint as "Philadelphia Coca-Cola Bottling Co." CCR Ans. to Am. Compl. 1.

Judgment (Document No. 27, filed Apr. 7, 2016), and CCR's Motion for Summary Judgment

(Document No. 28, filed Apr. 8, 2016).

The Court concludes there is no evidence on which a reasonable jury could find that CCR

caused or contributed to plaintiff's injury. Thus, CCR's Motion for Summary Judgment is

granted. The Court also concludes that there is no evidence on which a reasonable jury could

find that Mall Defendants had actual or constructive notice of the liquid that allegedly caused

plaintiff's fall, but that there is sufficient evidence on which a reasonable jury could find that the

Mall Defendants, with the exception of Millard Mall Services, Inc., created a dangerous

condition by failing to provide adequate lighting in the hallway and thereby causing or

contributing to plaintiff's fall. Thus, Mall Defendants' Motion for Summary Judgment is granted

as to defendant Millard Mall Services, Inc., and denied as to all other defendants.

## II.   BACKGROUND

The relevant facts as set forth in the evidence submitted by the parties are as follows.

### A. Plaintiff's fall and report to Brandon Mitchell

Around 11:15 A.M. on December 6, 2012, plaintiff Dianne Breen was shopping at

Franklin Mills Mall (the "Mall") in Philadelphia. Pl.'s Mem. in Opp., Ex. A ("Breen Dep.")

25:21-26:14, 27:23-28:2 (Document No. 31, filed May 12, 2016). As she was walking to the

restroom in the hallway near the Neiman Marcus Last Call store, she allegedly stepped on liquid

and fell, injuring, *inter alia*, her left knee, hip, elbow, shoulder, and neck. *Id.* at 28:11-29:1, 49:5-

20. Plaintiff stated that she was two or three feet past the soda machine in the hallway when she

"stepped [her] right heel" into the liquid and she "went flying in the air." *Id.* at 30:12-20, 44:22-

45:2, 57:22-15.

Plaintiff did not see the liquid before she fell. *Id.* at 31:21-24. Plaintiff testified that she "was walking down the hallway and [she] was looking in front of [her], looking at the ground." *Id.* at 30:12-20. Plaintiff further stated that she "could see that there was a very shiny floor with the light reflecting off of it" and she "was looking down towards where the bathroom was and [] was also looking at the ground because [she] couldn't believe how shiny the floor was. The light was reflecting off the floor and it was very shiny." *Id.* at 30:12-31:14. Plaintiff said she believed the hallway was "poorly lit," and stated that "the light was shining on the tile and it made it very shiny" so that "even if there was a spill," she did not think that she "would have been able to see it because of the reflection of the light." *Id.* at 36:5-14. Plaintiff further testified that the light reflecting off the floor was "why [she] didn't see the spill, because it was so shiny." *Id.* at 61:20-62:2.

After she fell, plaintiff saw that there was "a good size puddle" of liquid but does not remember how much of the floor the liquid covered. *Id.* at 36:18-24. Plaintiff stated that the liquid "was clear" and it was "dirty" or "kind of muddy," "like somebody had already stepped in it." *Id.* at 32:14-18, 33:5-8, 34:19-35:1. Plaintiff noticed a trail leading out of the liquid, "[a]way from [her,] down the hallway," toward the restrooms. *Id.* at 39:7-16. Before she fell, plaintiff saw a group of women walking in front of her toward the restroom, but does not know if the women walked past the liquid because she did not see "exactly where they were walking." *Id.* at 38:8-18.

Plaintiff does not know how the liquid got on the floor or how long it had been on the floor before she fell. *Id.* at 33:9-14, 34:15-18. She did not see a bottle, cup, can, or other debris on the floor or any warning signs or cleaning carts in the hallway. *Id.* at 35:2-8, 37:6-13. Plaintiff does not know what the liquid was, though she stated that "because it was clear, [she] thought . . . either someone spilled water or someone spilled Sprite, because it was by the soda

machine." *Id.* at 32:14-33:8, 35:9-20. Plaintiff does not remember if the liquid was sticky or if it had any odor. *Id.* at 34:9-14. She did not examine the soda machine after she fell. *Id.* at 39:2-4, 54:10-13.

After an unnamed woman helped her up, plaintiff went to a nearby Fossil store and "told a woman in there that [she] had fallen and . . . hurt [herself] and if she could please call somebody." *Id.* at 37:1-38:4, 39:20-40:4. Plaintiff waited on a bench outside the store and, "approximately 10 minutes later," a man named Brandon Mitchell arrived "on a Segway." *Id.* at 40:20-41:10. Plaintiff testified that she "could tell [Mr. Mitchell] worked at the Mall," and believes that he was wearing a uniform of some kind. *Id.* at 46:20-24. In her other visits to the Mall, plaintiff had not seen security officers or anyone else using a Segway. *Id.* at 48:2-7.

Plaintiff told Mr. Mitchell that she "was walking down the hallway to use the facilities and [she] fell and [she] hurt [herself]" and "wanted to show him where the spill was." *Id.* at 41:10-16. Plaintiff testified that Mr. Mitchell told her, "if [she] had fallen, that there was a camera down there that would have videoed [her] fall." *Id.* at 41:16-18. Mr. Mitchell did not go with plaintiff to see the liquid in the hallway. *Id.* at 42:19-43:3. Plaintiff does not remember Mr. Mitchell calling anyone or using a radio. *Id.* at 43:24-44:4. Plaintiff asked Mr. Mitchell for his name and phone number and gave him her name and phone number. *Id.* at 41:20-22. Mr. Mitchell gave her no other information about himself. *Id.* at 42:4-14, 47:1-9. There is no evidence that Mitchell was employed by Mall Defendants. *Cf. infra* pp. 18-19.

Other than the woman working at the Fossil store and Mr. Mitchell, plaintiff did not report her fall to anyone at the mall. Breen Dep. 44:5-19. Plaintiff did not report her fall to the Mall office or call anyone at the Mall after her fall to report it. *Id.* at 44:10-21. There is no evidence that anyone saw plaintiff fall or documented the condition of the hallway at the time of

plaintiff's fall. *Id.* at 30:1-3, 31:21-23, 37:14-21. Plaintiff did not take any pictures of the hallway that day. *Id.* at 54:10-13.

## B. Housekeeping and security personnel procedures

According to Edward Ciano, current general manager of the Philadelphia Mills property,[4] both housekeeping and security personnel were responsible for checking the floors of the Mall "for any issues that may arise." Pl.'s Mem. in Opp., Ex. D ("Ciano Dep.") 9:14-24, 13:18-22. Security personnel were also responsible for patrolling Mall property. *Id.* at 13:23-14:9.

At the time of plaintiff's alleged fall, defendant Millard Mall Services, Inc. ("Millard"), a janitorial company, provided housekeeping and janitorial services to the Mall. Ciano Dep. 8:24-9:10; Pl.'s Mem. in Opp., Ex. E ("Stavrakis Dep.") 7:7-12. According to George Stavrakis, region national manager for Millard,[5] Millard employees were responsible for "[c]leaning the common area of the mall," which included hallways to the public restrooms in the Mall. Stavrakis Dep. 13:20-14:8. To clean the floors, Millard employees would sweep and mop the floors "as needed;" "[a]ny waxing or scrubbing of the floors would be done overnight," and "as needed." *Id.* at 14:20-15:14. Millard employees were also responsible for inspecting the floors for "spills or hazards" throughout the day. *Id.* at 13:4-11.

Millard employees used a written log called a "Sweep Sheet" to record their inspections of the various "zones" of the Mall. *Id.* at 15:15-23, 26:14-19. The mall was divided into four zones, each identified by color. *Id.* at 15:24-16:4, 23:23-23:3. The Sweep Sheets are spreadsheets

---

[4] Mr. Ciano testified that "Philadelphia Mills is a property owned by Franklin Mills Associates, L.L.C. or LP" and managed by "Simon Property Group." Ciano Dep. 6:16-7:3. Mr. Ciano began working at Philadelphia Mills in February of 2013, and became general manager in June of 2015. *Id.* at 7:22-8:7. He was not employed at Philadelphia Mills at the time of plaintiff's alleged fall. *Id.* at 10:1-4. According to Mr. Stavrakis, the general manager in 2012 was John Ahle. Stavrakis Dep. 9:13-18.

[5] Mr. Stavrakis testified that he was employed by "The Millard Group." Stavrakis Dep. 7:5-9. As noted above, Mall Defendants have stated that defendant Millard Mall Services, Inc., was incorrectly identified as "The Millard Group." Mall Def.'s Ans. to Am. Compl. 1. The Court will refer to this entity as "Millard Mall Services" or "Millard."

divided into "half hour interval time slots" in which the Millard employee completing the inspection would document that he or she had checked the zone during that time. *Id.* at 26:20-27: 14. There is space for each time slot to list whether the Millard employee encountered a "problem" at that time and a space for "Comments" to indicate the type of problem. Pl.'s Mem. in Opp., Ex. D ("Blue Zone Sweep Sheet").

The Millard employee for each zone also carried a log for recording "spills" or other liquid on the floor—the "Spill/Wet Floor Log." Stavrakis Dep. 38:7-9; Pl.'s Mem. in Opp., Ex. E (Blue Zone Spill/Wet Floor Log). The Spill/Wet Floor Log spreadsheet has spaces to record, *inter alia*, the "Time Reported," "Time Arrived," "Reported By," "Location of Spill," and whether a "Slip/Fall" occurred. Pl.'s Mem. in Opp., Ex. E (Blue Zone Spill/Wet Floor Log). According to Mr. Stavrakis, a Millard employee encountering a "spill" during the inspection of the employee's zone was required to record the spill on both logs, or on "one or the other or sometimes both" the Sweep Sheet and the Spill/Wet Floor Log. Stavrakis Dep. 34:8-22, 38:10-15. If a Millard employee were alerted to a spill in a different zone, the employee would mark the spill on the Spill/Wet Floor Log. *Id.* at 38:16-39:6.

The hallway in which plaintiff allegedly fell was located in Blue Zone of the Mall. Ciano Dep. 14:16-21, 23:16-19. On December 6, 2012, the Sweep Sheet for the "Blue Zone" lists two "problems" encountered by Millard housekeeping personnel: "café en el piso" at 11:00 A.M.,[6] and "agua" at 1:00 P.M. Pl.'s Mem. in Opp., Ex. D (Blue Zone Sweep Sheet). The Spill/Wet Floor Log for the Blue Zone on December 6, 2012, has one entry: "Soda" at "3:51." Pl.'s Mem. in Opp., Ex. E (Blue Zone Spill/Wet Floor Log).[7] No "Slip/Fall" is recorded for this entry. *Id.*

---

[6] During Mr. Ciano's and Mr. Stavrakis's depositions, counsel for plaintiff represented that this entry translated to "coffee on the floor." Ciano Dep. 25:11-14; Stavrakis Dep. 34:3-6.

[7] Mr. Stavrakis testified that the entry for "Reported By" appeared to say "Cegora" and that he was unable to read the entry for "Location of Spill." Stavrakis Dep. 29:23-30:6.

There is no evidence of where, specifically, these liquids were located, except that they were in the Blue Zone. Ciano Dep. 26:16-20. None of entries on the Spill/Wet Floor Logs for the other three zones disclose that a "Slip/Fall" occurred. Pl.'s Mem. in Opp., Ex. E (Red Zone Spill/Wet Floor Log, Yellow Zone Spill/Wet Floor Log, Green Zone Spill/Wet Floor Log). There is no evidence that connects plaintiff's fall to any of the listed entries on the Spill/Wet Floor Logs of the other zones.

Millard employees were "generally" notified of slip and fall incidents by "[p]ublic safety or security at the mall." Stavrakis Dep. 19:1-8. If alerted to a slip and fall, Millard employees would fill out a "third party incident report." *Id.* at 19:9-12. Millard's housekeeping manager would complete the third party incident report with "information . . . from security" and "send it in to [Millard's] corporate office…" *Id.* at 19:9-18. According to Mr. Stavrakis, the third party incident report would list the "[n]ames of whomever had the incident, any witnesses possibility, condition of the floor, weather conditions, if there were witnesses." *Id.* at 19:19-23. There is no evidence of a third party incident report by Millard employees for plaintiff's alleged fall.

Security personnel were "also asked to help clean up if it was a large spill or pick up debris throughout their shift…." Stavrakis Dep. 27:15-20. At the time of plaintiff's alleged fall, security services for the Mall were provided by Valor Security. Ciano Dep. at 28:21-29:17. Valor Security is not a party in this case. According to Mr. Ciano, if a fall were reported to a security guard or an employee of the Mall, "the guard would assist the person who fell, ask if they needed medical attention, and would be prepared to call for an ambulance," as well as "offer icepacks or any type of quick remedy." *Id.* at 18:8-16. The security guard would "inspect the area where the issue [fall] occurred, and they would document it via incident report and photographs." *Id.* at

7

18:17-19:3. There is no evidence of an incident report or other documentation by Valor Security

personnel of plaintiff's alleged fall.

Valor security guards also monitored the surveillance system in place in the Mall. *Id.* at

14:10-15. Mr. Ciano testified that he believed that, on December 6, 2012, the hallway in which

plaintiff allegedly fell would have been monitored by surveillance cameras. *Id.* at 34:3-6.[8] Mr.

Ciano also testified that, depending on the surveillance camera, the video "would re-record after

so many days." *Id.* at 34:10-14. Mr. Ciano testified, "to [his] knowledge" the Mall did not have

video of plaintiff's fall in its possession. *Id.* at 34:7-9. The record does not include video footage

of plaintiff's fall.

After plaintiff filed her original Complaint in the Court of Common Pleas of Philadelphia

County, Mall Defendants removed the case to this Court. Plaintiff filed an Amended Complaint

in federal court on March 24, 2014, and added CCR as a defendant.[9] After discovery, both Mall

Defendants and CCR filed Motions for Summary Judgment.

## III.    APPLICABLE LAW

The Court will grant summary judgment if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when

it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and

determine the truth of the matter but to determine whether . . . there is sufficient evidence

---

[8] Mr. Stavrakis testified that he was not aware of surveillance in the Mall at that time. Stavrakis 16:11-13.
[9] Both Mall Defendants and CCR filed Cross-Claims with their Answers to plaintiff's Amended Complaint.

favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. In making

this determination, "the court is required to examine the evidence of record in the light most

favorable to the party opposing summary judgment, and resolve all reasonable inferences in that

party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the party opposing

summary judgment must identify evidence that supports each element on which it has the burden

of proof. *Celotex Corp.*, 477 U.S. at 322.

To establish negligence under Pennsylvania law, a plaintiff must prove four elements: (1)

the defendant owed "a duty or obligation recognized by law, requiring the actor to conform to a

certain standard of conduct for the protection of others against unreasonable risks," (2) the

defendant failed to conform to that standard, (3) "a causal connection between the conduct and

the resulting injury," and (4) "actual loss or damage" to the plaintiff. *Nw. Mut. Life Ins. Co. v.*

*Babayan*, 430 F.3d 121, 139 (3d Cir. 2005).

## IV.    DISCUSSION

### A. CCR's Motion for Summary Judgment

In its Motion for Summary Judgment, CCR argues that plaintiff has not produced any

evidence that the vending machine was the source of the liquid spill or that CCR breached any

duty to plaintiff. CCR Mot. Summ. J. ¶ 7. Plaintiff has not filed a brief in opposition to CCR's

Motion for Summary Judgment.[10] However, the Court must still "determine that the deficiencies

in the opponent's evidence designated in or in connection with the motion entitle the moving

party to a judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922

F.2d 168, 175 (3d Cir. 1990). Because there is no evidence in the record that the liquid leaked

---

[10] In its Order dated April 28, 2016, this Court ordered plaintiff to respond to both defendants' Motions for
Summary Judgment on or before May 12, 2016.

from the vending machine or that CCR had a duty to plaintiff, the Court grants CCR's Motion

for Summary Judgment.

First, there is no evidence that the liquid on the floor was connected to the vending

machine. Plaintiff said that she slipped on liquid two to three feet away from the vending

machine but she did not know what the liquid was or when or how it got on the floor. Breen Dep.

32:23-33:12, 57:22-58:15.

Second, there is no evidence that CCR had a duty to clean the hallway around the

vending machine. According to Mr. Stavrakis, employees of defendant Millard and Mall security

were responsible for addressing liquid and debris in hallways. Stavrakis Dep. 27:15-20.

Defendant CCR was not notified of liquid near the machine and was not responsible for keeping

the hallway clear of liquid and debris. *Id.* at 27:21-28:1**.** Because there is no evidence linking the

liquid to the vending machine or showing that CCR owed plaintiff a duty of care, defendant

CCR's Motion for Summary Judgment is granted.

## B.  **Mall Defendants' Motion for Summary Judgment**

### 1.  *Applicable Law*

Under Pennsylvania law, possessors of a premise "owe a duty to protect invitees from

foreseeable harm;" that is, possessors owe a duty when the possessor "knows or by the exercise

of reasonable care would discover the condition, and should realize that it involves an

unreasonable risk of harm to such invitee." *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp.

2d 547, 549 (E.D. Pa. 2008) (quotation marks and citations omitted). To show that the possessor

of the premise knew or, through reasonable care, should have known of the harmful condition,

the invitee must present evidence that the possessor "had a hand in creating the harmful

condition," had actual notice, or had constructive notice of the harmful condition. *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 723 (Pa. Super. Ct. 1997) (citation omitted).

Plaintiff and Mall Defendants agree that plaintiff was an invitee of the Mall and that Mall Defendants, with the exception of defendant Millard, were possessors of the premise and owed plaintiff protection from foreseeable harm. Defendant Millard, as an independent contractor providing cleaning services for the Mall, is "subject to the same liability" as the possessor of the premises for harm caused by the independent contractor's work on the possessor's behalf. *See Craig,* 555 F. Supp. 2d at 549 (finding that, under Pennsylvania law, the janitorial company was an independent contractor with the same liability as the possessor for harm caused by any "act[s] or activit[ies] [on the] land on behalf of the possessor") (citing *Restatement (Second) of Torts* § 383)).

### 2.  *Discussion*

In their Motion, Mall Defendants argue that plaintiff has not produced any evidence that they had actual or constructive notice of the spill. Mall Defs.' Mot. Summ. J. ¶¶ 7-8. Plaintiff argues in response that a reasonable jury could find that (a) Mall Defendants created a dangerous condition because the light reflecting on the floor prevented plaintiff seeing the spill; (b) Mall Defendants had constructive notice of the liquid on the floor because the liquid was dirty and had a trail leading away from it; (c) the lack of documentation of the liquid and plaintiff's fall permit the inference that Mall Defendants had deficient procedures for preventing plaintiff's fall and had constructive notice of the liquid. Pl.'s Mem. in Opp. 3-4. The Court addresses each argument in turn.

a. Creation of Dangerous Condition

Plaintiff argues that Mall Defendants "created a dangerous condition" because the lighting reflecting on the floor prevented her from being able to see and avoid the liquid on the floor. Pl.'s Mem. in Opp. 7. In support of her argument, plaintiff cites *Peterson v. Philadelphia Housing Authority*, 623 A.2d 904 (Pa. Commw. Ct. 1993). In *Peterson*, the plaintiff alleged that the Housing Authority's failure to maintain a bannister and stairwell lighting contributed to his fall down a stairwell. *Id.* at 907. The plaintiff testified that he had "reached for the bannister and fell" and that, because the stairwell was dark, "he did not see the missing bannister or debris." *Id.* The court found that plaintiff had raised a question of fact as to whether the missing bannister or the stairwell lighting had "substantially contributed" to the plaintiff's fall. *Id.*[11] The *Peterson* court stated that "[t]his determination must be made by a trier of fact rather than decided as a matter of law." *Id.*

The Court concludes that plaintiff has provided sufficient evidence for a reasonable jury to conclude that Mall Defendants, with the exception of defendant Millard, "had a hand in creating the harmful condition" present in the hallway where plaintiff allegedly fell. *Estate of Swift*, 690 A.2d at 723. Mall Defendants agree that Mall Defendants, with the exception of defendant Millard, were the possessors of the Mall, and owed plaintiff protection from foreseeable harm. Mall Defs.' Mem. Supp. Mot. 6. Plaintiff has presented evidence that Mall Defendants deviated from this standard of care by creating a dangerous condition on the premises. On this issue, plaintiff testified that she was looking at the floor before she fell, and that "there was a very shiny floor with the light reflecting off of it" *Id.* at 30:12-31:14. Plaintiff stated that "the light was shining on the tile and it made it very shiny" so that "even if there was

---

[11] The *Peterson* court also concluded that "whether . . . inadequate stairwell lighting constitutes a defect in the real property" as a fixture, and thus an exception to sovereign immunity, was a question for a trier of fact. *Id.* at 906.

a spill," she does not think she "would have been able to see it because of the reflection of the light." *Id.* at 36:5-14. Finally, on the issue of lighting, plaintiff testified that the light reflecting off the floor was "why [she] didn't see the spill, because it was so shiny." *Id.* at 61:20-62:2.

The Court finds that there is insufficient evidence for a reasonable jury to find that defendant Millard created the lighting conditions at the place of the fall. Any liability on Millard's part would arise from its work as an independent contractor and is limited to harm caused by its work on behalf of the possessors of the Mall. While there is evidence that Millard employees were involved in floor maintenance such as waxing, sweeping, and mopping, there is no evidence that any such work caused or contributed to plaintiff's fall. *Id.* at 14:20-15:14.

      b.   Actual or Constructive Notice

Plaintiff presents no evidence that the Mall Defendants caused the liquid to be on the floor or that Mall Defendants had actual notice of the liquid on the floor. Thus, plaintiff must rely on constructive notice to establish Mall Defendants' duty of care with respect to the liquid on the floor. Courts rely on multiple factors to determine whether possessors had constructive notice of a dangerous condition, including "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Craig*, 555 F. Supp. 2d at 549-50 (citation omitted). However, the "duration of the hazard" is one of the most important factors— "if the hazard existed for a very short period of time before causing any injury, then the possessor . . . would not discover the hazard," even if exercising reasonable care, and "would owe no duty to protect invitees from the hazard." *Id.* (citation omitted).

To survive summary judgment on the issue of constructive notice, the plaintiff must provide evidence sufficient to enable a reasonable jury to find that the hazard existed long

enough for the possessor to reasonably discover it. *Rumsey v. Great Atl. & Pac. Tea Co.,* 408

F.2d 89, 90 (3d Cir. 1969). While the plaintiff need not disprove every "contrary conclusion"

supported by the evidence, *id.* at 91 (citing *Smith v. Bell Tel. Co.*, 153 A.2d 477 (Pa. 1959)), the

"jury is not permitted . . . to speculate or guess" as to the length of time that the liquid was on the

floor. *Lanni v. Penn. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952). The duration of a hazard may be

shown through circumstantial evidence of its condition. In the case of a liquid, the

"[a]ccumulation of dirt or debris" and "tracking" through the liquid may "establish that it has

been there a sufficient time to give constructive notice." *Evans v. Canteen Corp*., Civil Action

No. 94-2381, 1995 WL 355231, at \*2 (E.D. Pa. June 12, 1995). However, inquiries into the

condition of a substance are very fact-specific—"small differences in the evidence can lead to

opposite conclusions as to whether the condition of [the substance on the floor] alone or with

other circumstances, [is] sufficient to support a rational inference" of constructive notice.

*Rumsey,* 408 F.2d at 90.

In *Rumsey*, the Court of Appeals for the Third Circuit illustrated the fact-dependent

nature of the duration inquiry by comparing two Pennsylvania Supreme Court cases, *Lanni v.*

*Pennsylvania Railroad Co.*, and *Mack v. Pittsburgh Railways Co.,* 93 A. 618 (Pa. 1915).

*Rumsey,* 408 F.2d at 90. The Third Circuit stated the following about the two cases. In *Lanni*, the

plaintiff slipped outdoors in an oil spot that was "soft and covered with dust or dirt." *Id.* (citing

*Lanni*, 88 A.2d at 889). Despite the fact that the oil spot was covered with dirt, the *Lanni* court

found "[t]here was no evidence, facts or circumstances that were sufficient to enable a jury" to

reasonably find constructive notice of the oil. *Id.* (citing *Lanni*, 88 A.2d at 889). Specifically,

there was no evidence that anyone had stepped in the oil before the plaintiff, and there was not

"the slightest evidence from which it could be reasonably and legitimately inferred in which

period of time the dust or dirt could accumulate" due to the wind in that location. *Id.* (citing

*Lanni*, 88 A.2d at 889). In contrast, the Pennsylvania Supreme Court found sufficient evidence

for the jury to find that the grease spot had existed long enough to establish constructive notice

where the grease spot was "covered with dust" and "had footmarks in it." *Id.* (citing *Mack*, 93 A.

at 619). The *Mack* court reasoned that, because the plaintiff was the first person to leave the

railcar at the stop, the other footprints had been created by earlier passengers. *Id.* (citing *Mack*,

93 A. at 619).

In support of her argument that Mall Defendants had constructive notice of the spill,

plaintiff points to her deposition testimony that, after she fell, she noticed the liquid was dirty

and that a trail of liquid led away from plaintiff toward the restrooms at the end of the hallway.

Pl.'s Mem. in Opp. 4-5. In their Reply, Mall Defendants argue that plaintiff saw the dirtiness of

the liquid and the trail leading out of it after a group of women had walked down the hallway in

front of plaintiff and plaintiff herself had stepped in the liquid. Mall Defs.' Reply 2-3.

The Court does not decide at the summary judgment stage whether the weight of the

evidence favors plaintiff's theory over defendants'; plaintiff need only show that a jury finding in

her favor is reasonable based on the evidence. Nevertheless, the Court concludes that the record

does not support a reasonable jury finding that Mall Defendants had constructive notice of the

spill. Plaintiff has produced no evidence of how long the liquid was on the floor. Breen Dep.

33:9-14, 34:15-18. While plaintiff stated that the liquid was dirty, "as if someone had stepped in

it," and saw a trail of liquid leading toward the restrooms, plaintiff also saw a group of women

walking down the hallway in front of her. *Id.* at 33:6-8, 34:22-35:1, 38:8-14, 39:7-16. Plaintiff

does not know whether the women walked past the area where she fell. *Id.* at 38:15-18.

There is no other evidence on the question of when the spill occurred. Without more evidence, a jury would be left to speculate on whether the liquid spilled on the floor only moments before the group of women walked down the hallway, dirtied the liquid and created the trail, or spilled at an earlier time. *See Slater v. Genuardi's Family Mkts.*, Civil Action No. 13-794, 2014 WL 4763336, at *3 (E.D. Pa. Sept. 24, 2014) ("There is simply no way for this Court or a jury to know whether the dangerous condition appeared five minutes before Slater's fall or an hour before her fall, yet went unnoticed by the employee conducting the sweep."). Thus, the Court concludes that there is insufficient evidence for a reasonable jury to find that Mall Defendants had constructive notice of the liquid on the floor.

c.   Spoliation Inference and Related Claims

Finally, plaintiff argues that Mall Defendants' negligence can be shown by their failure to record the liquid on the floor or plaintiff's fall on the Sweep Sheet or Spill/Wet Floor Logs, to produce any incident report, or to retain and produce video surveillance of plaintiff's alleged fall. In essence, plaintiff relies on the doctrine of spoliation and, in support of her argument, cites *Rodriguez v. Kravco Simon Co.*, a case involving a slip-and-fall on a sticky, brown liquid at a mall. 111 A.3d 1191 (Pa. Super. Ct. 2015). In *Rodriguez*, the plaintiff fell at a mall that employed a cleaning service. *Id.* at 1196. As in the above-captioned case, the cleaning service kept records of its "sweeps" and any liquid or debris on the floor that required cleaning. *Id.* In response to defendants' contention that plaintiff had not shown actual or constructive notice, the plaintiff argued that, although there was testimony that the cleaning service was required to provide a log for each day, the cleaning log for the day of his fall was missing from the records provided by the defendants. *Id.* The Superior Court of Pennsylvania determined that this missing evidence created an open question of spoliation and "preclude[d] the entry of summary judgment

16

in favor of [that party]." *Id.* ("With the open possibility that the ESC employees failed to check the floors as scheduled prior to [the] fall, it is not clear that Defendants are entitled to judgment as a matter of law.").

Spoliation may result in an inference that missing or destroyed evidence was harmful to the withholding party's case. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (describing one sanction for spoliation). Spoliation occurs when (1) a party has evidence in its control; (2) "the evidence is relevant to claims or defenses in the case;" (3) the party actually suppresses or withholds that evidence; and (4) "the duty to preserve the evidence was reasonably foreseeable." *Bull v. United Parcel Serv., Inc*., 665 F.3d 68, 73 (3d Cir. 2012).[12] The proponent of finding spoliation bears the burden of establishing spoliation. *Id.* at 77.

Plaintiff does not argue specifically for a spoliation inference based on the lack of documentation in this case. Rather, she claims that, like the plaintiff in *Rodriguez*, she has raised a question as to whether the floors were inspected on schedule. The Court rejects this argument. Unlike the plaintiff in *Rodriguez*, there is no evidence that the zone in which plaintiff fell was not inspected as scheduled. Plaintiff fell in the Blue Zone. The Sweep Sheet for December 6, 2012, records inspections in the Blue Zone in half-hour time frames throughout the day, and includes reference to cleaning up a coffee spill fifteen minutes before plaintiff says she fell at 11:15 A.M. Pl.'s Mem. in Opp., Ex. E (Blue Zone Sweep Sheet).

Furthermore, the lack of documentation of the liquid in the hallway or of plaintiff's alleged fall, without more, does not support the conclusion that spoliation occurred. While

---

[12] The Third Circuit noted in *Schmid* that though there is some disagreement as to whether spoliation is matter of state substantive law or federal evidentiary law, there does not appear to be a significant difference between the two approaches. 13 F.3d at 78; *see PTSI, Inc. v. Haley*, 71 A.3d 304, 315-16 (Pa. Super. Ct. 2013) (describing spoliation as the "non-preservation or significant alteration of evidence for pending or future litigation" and arising from "the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence" than a party who did not destroy the evidence (citations omitted)).

documentation or video footage of plaintiff's fall would be relevant to the claims and defenses in this case, there is no evidence that Mall Defendants had any such evidence in their control at a time that litigation was foreseeable or that they destroyed or withheld evidence to prevent its use in litigation. Without such evidence, there can be no spoliation.

There is no evidence that plaintiff's fall was reported to Mall Defendants. None of the Sweep Sheets or Spill/Wet Floor Logs in evidence show that a slip and fall around the time of plaintiff's fall was reported to Millard employees. No third party incident report by Millard employees is in evidence. Plaintiff reported her fall only to the Fossil store employee and Mr. Mitchell, and there is no evidence that either were employees of Mall Defendants. Breen Dep. 44:5-16, 44:17-21. On this issue, plaintiff testified that she "could tell [Mr. Mitchell] worked at the Mall," that he arrived on a Segway, and that she believed he was wearing a uniform of some kind. *Id.* at 41:7-10, 46:20-47:24. However, plaintiff's counsel referred to Mr. Mitchell as a security guard in questioning Mr. Ciano, and Mr. Ciano testified that Valor Security provided security services for the Mall. Ciano Dep. 18:3-7, 28:21-29:17. In view of these statements, the Court treats Mr. Mitchell as an employee of Valor Security for the purposes of this ruling. Significantly, Valor Security is not a party in this case.

Similarly, while there is evidence that Valor Security employees monitored the surveillance video in the Mall, there is no evidence that Mall Defendants ever possessed a video recording of plaintiff's alleged fall at a time when litigation was reasonably foreseeable. Although Mr. Mitchell allegedly told plaintiff that her fall would be recorded by surveillance video and Mr. Ciano testified that he believed that the hallway was under video surveillance on the day of plaintiff's alleged fall, Mr. Ciano testified that "[i]t depends on the timing" as to how many security guards would monitor the surveillance video and that, "depend[ing] on the unit,"

18

the tapes would re-record after a few days. Ciano Dep. 14:10-15, 34:3-14. There is no other evidence of the alleged video footage, and there is no evidence of the procedure for preserving surveillance video after a fall.

On the present record, the Court cannot conclude that there is an open question as to whether relevant evidence was lost, withheld, or destroyed by Mall Defendants to avoid its use in foreseeable litigation. Thus, plaintiff's argument that the lack of documentation permits an inference of negligence is rejected.

## V. CONCLUSION

For the foregoing reasons, CCR's Motion to Summary Judgment is granted. Mall Defendants' Motion for Summary Judgment is granted as to defendant Millard Mall Services, Inc., and is denied as to all other defendants.  An appropriate order follows.